UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

GREGORY HOVEY and VICTORY HILL )
KENNEL, LLC, )
)
    Plaintiffs, )
)
    v. )    Case No. 5:16-cv-266
)
STATE OF VERMONT, DISTRICT 7 )
REGIONAL ENVIRONMENTAL )
COMMISSION, VERMONT NATURAL )
RESOURCES BOARD; TOWN OF )
VICTORY, VERMONT; ROBERT )
FLANIGAN; TONI FLANIGAN; SUE )
SKASKIW; FERNE LOOMIS; CAROL )
EASTER; DOUG PRESTON; KIRSTEN )
SULTAN; DIANE SNELLING; EUGENE )
REID, )
)
    Defendants. )

## OPINION AND ORDER ON MOTIONS TO DISMISS
### (Docs. 9, 22, 50)

    This is a dispute between two neighbors in a rural town over the land use permit for a dog

kennel. Plaintiff Gregory Hovey is the owner of a kennel which breeds Labrador retrievers and

beagles.[1] Robert and Toni Flanigan are neighbors who opposed an expansion of the kennel

because they are disturbed by the barking of the dogs.

    The dispute has already been to the Vermont Supreme Court on an appeal of the Act 250

land use permit. *See In Re Gregory Hovey Act 250 Permit ("In Re Hovey")*, No. 2015-205, 2015

WL 7628685 (Vt.). Following issuance of the permit, the dispute between these neighbors has

returned to federal court in the guise of a civil rights claim against the Flanigans, Kirsten Sultan

---

[1] There are two named plaintiffs: Gregory Hovey and Victory Hill Kennel, LLC.
Mr. Hovey is the managing member of the LLC. For convenience, the court will refer to these
two parties as "plaintiff."

who was the state employee responsible for administering the District 7 Regional Environmental Commission which issued the permit, Diane Snelling as chair of the Vermont Natural Resource Board, the State of Vermont and the Town of Victory, and four municipal officers. An additional state official, Eugene Reid, has not been served with the amended complaint and the plaintiff is undecided about whether to keep him in the case.

### Facts

The facts are drawn from the amended complaint as well as from the three-justice summary decision of the Vermont Supreme Court in *In Re Gregory Hovey Act 250 Permit*.

Plaintiff Gregory Hovey is a long-time resident of Victory, Vermont. For about 30 years, he has raised dogs and sold puppies as a hobby. (Doc. 44, Amended Complaint, ¶¶ 25–26.) Defendants Robert and Toni Flanigan are Plaintiff's neighbors to the east. The Flanigans' home is 150 yards from the dog kennel. *In Re Hovey*, 2015 WL 7628685, at *1.

Plaintiff's kennel is not the only kennel in the neighborhood. Ryan Hovey operates a kennel for breeding Labradors about 1,000 feet south of the Flanigans' boundary. In addition, Skip Easter runs a dog rescue facility about ½ mile south. *Id.*

In March 2013, plaintiff decided to expand his kennel operations. (Doc. 44 ¶ 27.) He started construction without an Act 250 permit. The Flanigans complained about the lack of a permit to the District 7 Regional Environmental Commission (the "Commission"). (*Id.*) The Flanigans also complained to the Vermont Natural Resources Board which fined plaintiff $3,850 for commencing construction without a permit. (Doc. 44 ¶ 30.) Plaintiff quotes a member of the Board as stating that he was pursuing the violation in order to "get the Flanigans off my back." (*Id.*)

In September 2013, following a hearing, the Commission granted an Act 250 permit. The permit restricts the project to 50 dogs. *Id.* Plaintiff complains that the Flanigans "made

2

false and defamatory statements against Plaintiffs concerning the kennel operation" at the hearing. (Doc. 44 ¶ 30.) He states that the Flanigans told people at the hearing that Plaintiff had "'hoodlums' at his house taking care of his dogs." (*Id.*)

The Flanigans appealed the Act 250 permit to the Environmental Division of the Vermont Superior Court which conducted a merits hearing. *In Re Hovey*, 2015 WL 7628685, at *1. The Environmental Court affirmed the issuance of the permit and modified it to include a specific limit on sustained dog barking. *Id.* at *3. The court defined barking to include all "'canine vocalization', thus ensuring that 'howling' [was] included." *Id.* at *4. The decision of the Environmental Court was affirmed on appeal by summary order. *Id.*

According to the complaint, the Flanigans have complained at length about plaintiff to law enforcement and state agencies. The complaint describes the following false complaints:

- 3 complaints to the Essex County Sheriff's Department;
- a complaint to the game warden that plaintiff had poached a moose;
- repeated complaints to the Vermont State Police of abuse of animals, lack of a "breeders license," and violations of the Act 250 permit;
- complaints to supervisors at the state police and Vermont Department of Fish and Wildlife that officers were biased in favor of plaintiff;
- false claims to the Vermont Department of Agriculture;
- false statements to the offices of the Governor and the Lt. Governor;
- complaints to the United States Department of Agriculture;
- complaints to the American Kennel Club;
- a report to the FBI;
- complaints to various Humane Societies;

- complaint to Green Mountain Power falsely stating that plaintiff was burning brush beneath power lines.

Although various inspections occurred as a result of these complaints, no investigating agency took any action against plaintiff. (Doc. 44 ¶ 30.)

Plaintiff alleges that the Town of Victory joined in a "vendetta against the Plaintiffs." (Doc. 44 ¶ 31.) He complains that he was required to obtain a town pet dealer permit even though the other breeder in Victory, Ryan Hovey, did not face a similar requirement. *See* 20 V.S.A. § 3681. This aspect of the story is complicated by allegations that plaintiff obtained a form to apply for a pet dealer permit from the town clerk of St. Johnsbury. After the Victory town clerk Carol Easter refused to sign the permit, Plaintiff persuaded a selectboard member to sign the permit which later was determined to be invalid. The clerk then reissued the permit. She subsequently revoked this second permit on the ground that plaintiff was required "to comply with three additional conditions that were not required under the Pet Dealer Permit statute." (*Id.*) After plaintiff demonstrated compliance, the clerk reissued the permit. Plaintiff overheard Robert Flanigan berating the clerk for reissuing the permit. (*Id.*)

Plaintiff complains that the Town Clerk and the Chair of the Selectboard made false statements about him, "including that he has abused his animals and that he has a 'puppy mill.'" (*Id.*) The Chair also falsely implied that plaintiff was a violent person.

In 2014, the municipal animal control officer issued two tickets to plaintiff. Both were later withdrawn. (*Id.*)

Plaintiff draws attention to what he describes as more favorable treatment accorded by the town to Ryan Hovey's breeding kennel. (The familial relationship between the men—if

4

any—is not disclosed.) Ryan Hovey has not been required to obtain an Act 250 permit nor to obtain a pet dealer permit. (*Id.*)

Plaintiff raises concerns about the town's treatment of the local humane society and the status of the Flanigans and their adult sons as town voters. (*Id.*)

Plaintiff also complains that the Flanigans have "enlisted the help of the State of Vermont in attempting to shut down Plaintiffs' business" in the following ways:

- requiring plaintiff to obtain an Act 250 permit when six other commercial businesses in Victory do not face the same requirement;

- recommending through defendant Kirsten Sultan that plaintiff withdraw a request for an amended permit increasing the number of dogs by 5 and puppies by 15;

- recruiting defendant Sue Skaskiw, "a self-professed animal rights advocate" to conduct an inspection and attempt to take the dogs away from plaintiff.

(Doc. 44 ¶ 32.)

## Causes of Action

From these allegations, plaintiff advances multiple causes of action:

### I. Constitutional Claims

- *Equal protection.* This is a "class of one" claim. There is no claim of racial discrimination or a claim that plaintiff is a member of a protected group. Plaintiff claims that he has been treated in an arbitrary manner by state and municipal officials who have imposed permit and license requirements not required of other similarly situated businesses within the Town of Victory. (Doc. 44 ¶¶ 33–37.)

- *Due Process.* Plaintiff complains that his pet dealer permit was revoked without due process, that he was denied an amendment of his Act 250 permit without a hearing, and

that he was improperly advised by defendant Kirsten Sultan to withdraw his request for an amendment. (*Id.* ¶¶ 38–44.)

- *Search and seizure.* Plaintiff complains that the Flanigans' complaints resulted in unreasonable "inspections of his personal and business property" by state, federal and local agencies. (*Id.* ¶ 46.)

- *Common Benefits Clause.* Plaintiff alleges that the actions of the Flanigans and of state and municipal officials "in collaboration" have denied plaintiff rights to equal treatment under the Common Benefits Clause of the Vermont Constitution "by arbitrarily requiring and denying permits and licenses not required by or denied to others similarly situated." (*Id.* ¶ 52.)

- *Privileges and immunities.* Plaintiff alleges that the state and municipal defendants have "arbitrarily and unreasonably . . . interfered and continue to interfere with Plaintiff Hovey's constitutional right to earn a living in a lawful occupation." (*Id.* ¶ 56.)

- *Conspiracy to interfere with civil rights.* Plaintiff alleges that all defendants conspired to shut down his kennel business by imposing requirements to obtain permits not required of other similar businesses, by conducting numerous searches, and by "continuous harassment." (*Id.* ¶ 71.) This claim is advanced under 42 U.S.C. § 1985(3).

## II.     State-Law Claims

- Tortious interference with business relations  (Doc. 44 ¶¶ 59–62)

- Defamation (*id.* ¶¶ 63–66)

- Intentional Infliction of Emotional Distress (*id.* ¶¶ 67–70).

## Pending Motions

Defendants Robert and Toni Flanagan have moved to dismiss (Docs. 22, 50) the complaint on grounds that as private citizens, they are not proper parties for the constitutional claims expressed in Counts 1 through 5. They move to dismiss the tortious interference claim on the ground that there is no allegation that plaintiff's contractual relations with a third-party (such as the potential purchaser of a puppy) were harmed by the alleged conduct. They seek dismissal of the defamation claim on the ground that the allegations fail to identify the defamatory statements with sufficient particularity. They seek dismissal of the IIED claim on the same basis. They do not address Count 9 specifically.

The state defendants (the State of Vermont, the District 7 Regional Environmental Commission, the Natural Resources Board, Kirsten Sultan, Diane Snelling, Chair of the Natural Resources Board, and Eugene Reid, Chair of the District 7 Environmental Commission) move to dismiss on the following grounds (Doc. 9):

- Eleventh Amendment bar to state law and constitutional claims for money damages against the state and various state agencies;

- unavailability of injunctive relief under the *Ex Parte Young* exception to the Eleventh Amendment;

- the factual allegations against defendant Sultan are insufficient to support the causes of action against her; such claims are also barred on grounds of statute of limitations and qualified immunity;

- the "class of one" equal protection claim is not supported by claims of virtually identical comparators;

- there is no property interest in obtaining an amendment to an Act 250 permit for purposes of due process;

- plaintiff has a reduced expectation of privacy in his commercial property and has not pled facts to show an unreasonable intrusion by state actors;

- the Privileges and Immunities Clause does not excuse plaintiff from state regulation of his business activities;

- plaintiff has failed to make out a claim for tortious interference.

After initial briefing, the court granted Plaintiff's motion to file an amended complaint, and permitted supplemental memoranda in support of and in opposition to the motions to dismiss. The court considers these papers and the original motions to dismiss as applied to the amended complaint (Doc. 44).

## Analysis

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court accepts all facts as alleged in the complaint and "draw[s] all reasonable inferences in the plaintiff's favor. *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## I.     Claims Against the State Defendants

The court begins with the motion to dismiss filed by the state defendants (Doc. 9).

### A.     Dismissal of the State, the Commission, and the Vermont Natural Resource Board

Plaintiff concedes that the Eleventh Amendment bars his claims for damages against the State of Vermont, the District 7 Regional Environmental Commission, and the Vermont Natural

Resources Board. (Doc. 35 at 2.) Vermont has not waived its immunity to suit under 42 U.S.C. § 1983. *See* 12 V.S.A. § 5601(g) ("Nothing in this chapter [establishing a limited waiver of sovereign immunity for actions of state employees] waives the rights of the State under the Eleventh Amendment of the U.S. Constitution." These parties were improperly sued.

### B.  Claims Against Diane Snelling and Eugene Reid

Diane Snelling, Chair of the Vermont Natural Resources Board (and a former state senator), and Eugene Reid, Chair of the District 7 Commission, were both originally sued in their official capacities. (Doc. 1 at 1.) Plaintiff obtained leave of court to file an amended complaint. Both are now sued in their "personal and official" capacities. (Doc. 44 at 1.)

There is a degree of confusion about the status of the personal capacity claims against Senator Snelling and Mr. Reid. The Office of the Attorney General entered appearances on their behalf in response to the original complaint. (Docs. 7, 8.) The Attorney General subsequently filed the pending motion to dismiss, an objection to the motion to amend the complaint, and a supplemental memorandum of law in support of the motion to dismiss after the complaint was amended. (Docs. 9, 40, 49.)

At oral argument, counsel for Senator Snelling and Mr. Reid argued that neither had been properly served with regard to claims against them in their individual capacities. The court agrees that Plaintiff should have served Senator Snelling and Mr. Reid when he added claims against them in their individual capacities. Added claims against a party in his or her individual capacity when she is already named in her official capacity is equivalent to adding an entirely new party—the defendant must therefore be served in accordance with Federal Rule of Civil Procedure 4, rather than by merely serving papers to the attorney of a party who has already made an appearance, as specified in Rule 5. See *Jackson v. Hayakawa*, 682 F.2d 1344, 1348–49 (9th Cir. 1982) (holding that new service is required where amended complaint includes "a

9

change in the status of defendants" to include claims against them in their personal capacities); *Love v. Hayden*, 757 F. Supp. 1209, 1211–12 (D. Kan. 1991) (citing *Jackson* and coming to same conclusion). The claims against these defendants are therefore dismissed for insufficient service of process.

Even if the amended complaint had been properly served on Senator Snelling and Mr. Reid, however, it contains no allegations of personal involvement by Senator Snelling or Mr. Reid in any of the disputes and legal proceedings concerning plaintiff's dog kennel. Paragraphs 22 and 23 allege that Senator Snelling is "the current Vermont Natural Resources Board Chair" and that Mr. Reid is "the current District 7 Regional Environmental Commission Chair." The amended complaint sets out no facts which would support a claim of personal fault and liability. It sets out no facts which would support an injunction against either defendant. It is entirely silent regarding either defendant's alleged personal role in the dispute.[2]

The case is no different with respect to the state law claims. There is no specific allegation that either Senator Snelling or Mr. Reid took part in any interference with Plaintiff's business activities or made a defamatory statement.

### C.    Claims Against Kirsten Sultan

Ms. Sultan was the District 7 Regional Environmental Commission Coordinator during the relevant periods. (Doc. 44 ¶ 21.) The specific allegations against her are that she received the original complaint from the Flanigans (*id.* ¶ 29) that following issuance of the Act 250 permit, she responded to the Flanigans' complaints to the Natural Resources Board by inspecting the kennel at least 3 times without finding any violations (*id.* ¶ 29), that she told plaintiff that "the Commission only pursues Act 250 compliance when there is a complaint" (*id.* ¶ 32), and

---

[2] At the hearing on April 17, 2017, Plaintiff voluntarily dismissed all claims against Diane Snelling.

that after plaintiff sought to amend the Act 250 permit to expand the kennel, she "recommended that Plaintiff withdraw his amended permit because of the Flanigan's complaint." (*Id.*)

Although there are no additional allegations against Ms. Sultan in the enumerated causes of action, the court understands that she is one of the "officials of the State of Vermont" whom plaintiff alleges denied him equal protection of the laws (Count 1), due process (Count 2), protection against unreasonable searches (Count 3), Common Benefits under the Vermont Constitution (Count 4), and Privileges and Immunities (Count 5).

The court begins with the specific allegations concerning Ms. Sultan. None of these make out a constitutional violation for which she could be personally liable.

First, she received the Flanigans' complaints and, although the amended complaint is not specific, the court can reasonably infer that as the Coordinator of the Regional Environmental Commission, she informed the plaintiff of the Act 250 violation and administered the contested permit process which resulted in the issuance of an Act 250 permit for the expansion of the kennel. All of these actions have been validated by the decision of the Vermont Supreme Court in *In re Hovey*. That decision settled many of the issues which plaintiff seeks to raise against the state defendants.

In affirming the decision of the Environmental Court, the Vermont Supreme Court ruled that the trial court properly evaluated the criterion of added noise under the analytical framework of criterion 8 governing the issuance of permits. *See* 10 V.S.A. § 6086(a)(8). The trial court exercised its authority correctly in finding an adverse aesthetic impact, determining that the impact was excessive or "undue," and formulating permit conditions to keep the noise within reasonable bounds. In the view of the appeals court, "the case supports the basic proposition that there is a point at which the noise associated with a proposed project becomes more than

residents are used to hearing on a regular basis, and the effect is therefore adverse. The court found that point had been reached here, and it did not err in doing so." *In re Hovey*, 2015 WL 7628685, at *4.

If the trial court acted correctly in upholding the permit, then as Commission Coordinator, Ms. Sultan must have acted correctly in taking the initial complaint from the Flanigans, convening a hearing, and assisting the Commission in reaching a decision to issue a permit. This is not a case in which Plaintiff demonstrated that the permit process did not apply to the enlargement of his kennel or that he was otherwise exempt.

Plaintiff states that Ms. Sultan advised him that permit enforcement is driven by neighbors' complaints. That is likely true, and in any event telling Plaintiff this is hardly a basis for a lawsuit.

There is no constitutional tort in any of these allegations against Ms. Sultan. The remaining question is whether read as a whole, they add up to a plausible allegation that Ms. Sultan was in some way a conspirator against plaintiff. Such a claim appears in the Ninth Cause of Action ("Conspiracy to Interfere with Civil Rights") U.S. Const. Amend. XIV & 42 U.S.C. § 1985(3)"). Plaintiff alleges that all defendants "engaged in a conspiracy to shut down Plaintiff's business by conspiring to require Plaintiff to respond to numerous searches of Plaintiff's property, respond to continuous harassment by Defendants, respond to numerous requirements to obtain permits not required of similarly situated persons and pay unnecessary fees and expenses to defend themselves against such conspiracy." (Doc. 44 ¶ 71.)

The difficulty with this claim is that section 1985—unlike section 1983—is a tool only available to address race-based discrimination. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971); *Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015). Unlike section 1983 which functions to

provide a federal remedy for a wide variety of constitutional torts, section 1985(3) remains close

to the historical purpose of its enactment during the era of Reconstruction as a defense against

racist conspiracies by groups such as the Ku Klux Klan. *Griffin*, 403 U.S. at 101–02. It does not

provide a remedy against Ms. Sultan.

In completing this discussion, the court considers the remaining constitutional claims as

they apply to Ms. Sultan.

### 1.    Equal Protection—Class of One

Plaintiff alleges that Ms. Sultan denied him equal protection of the laws "by arbitrarily

enforcing permit and license requirements not required of others." (Doc. 44 ¶ 35.) Plaintiff's

counsel explains that this allegation concerns the decision to enforce the Act 250 permit

requirement against plaintiff while allowing other businesses to operate in Victory without

meeting Act 250 requirements. (Doc. 52 at 4.) Plaintiff describes this as a "class of one" claim

since there is no allegation of racial discrimination. (*Id.*)

Victory is an extremely small town with only 62 residents and six other businesses. One

of these is the dog kennel operated by Ryan Hovey without the benefit of an Act 250 permit. But

it is not the operation of the business which triggers the Act 250 permit requirement. It is the

onset of construction, development or subdivision—which in Plaintiff's case was the addition of

new space to his kennel. *See* 10 V.S.A. § 6081. The complaint lacks any suggestion that

Ms. Sultan turned a blind eye to the permit requirements of any other construction project while

singling out plaintiff's project for attention. "Class of one" claims of unequal treatment are not

favored and require substantive pleading and proof. The plaintiff must prove that "(i) no rational

person could regard the circumstances of the plaintiff to differ from those of a comparator to a

degree that would justify the differential treatment on the basis of a legitimate government

policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to

exclude the possibility that the defendants acted on the basis of a mistake." *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir. 2010) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

The complaint fails even to acknowledge the steep requirements necessary to establish a class of one for equal protection purposes. It states only "[a]pproximately ¼ mile away from Greg Hovey is the breeding kennel of Ryan Hovey. The Town of Victory has not required Ryan Hovey to obtain an Act 250 permit, nor has the Town required Ryan Hovey to obtain a pet dealer permit, even though Ryan Hovey is required to have both an Act 250 permit and a Pet Dealer Permit." (Doc. 44 ¶ 31.) Setting aside the absence of any reference to Ms. Sultan in this allegation, the reference to Ryan Hovey's status as an unpermitted kennel operator is insufficient to qualify him as a comparator. Unless "every claim for improper provision of municipal services or for improper conduct of an investigation" has the capacity to become a class of one claim for violation of equal protection, *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1009 (7th Cir. 2004), the courts must set reasonable pleading standards. As the Second Circuit has characterized, "class-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Ruston*, 610 F.3d at 59 (internal quotation marks omitted). These would require specific claims that Ms. Sultan acted purposefully in subjecting plaintiff to permitting requirements for arbitrary and unfair reasons while ignoring other violators. No such claim appears. There is no allegation that Ryan Hovey commenced construction or in some other way subjected his kennel to Act 250 scrutiny. Instead, plaintiff frequently supplies the reason Ms. Sultan required him to get a permit: he was the subject of complaints from his neighbors that he was embarking on construction without the

necessary permit. The complaint identifies no one else in this situation. That alone is sufficient to distinguish his case from the handful of other businesses operating in Victory.

### 2. Due Process Violation—Amendment of the Act 250 Permit

Plaintiff alleges that Ms. Sultan improperly advised him to withdraw his application for an amended permit. At oral argument, counsel for Ms. Sultan was able to shed some light on this allegation. Rule 34 of the Act 250 Rules promulgated by the Natural Resources Board of the State of Vermont governs amendments to existing permits. An amendment is required "for any material change to a permitted development." Act 250 Rule 34(A), *available at* http://nrb.state.vt.us/lup/publications/rules/2013rules.pdf (last visited May 2, 2017). A "[s]ubstantial change to a pre-existing development"—such as the proposed enlargement of the kennel—is subject to a new application process including the notice and hearing provisions." *Id.* Rule 34(B). A permittee might wish to be cautious before opening his business to re-examination. Through counsel Ms. Sultan suggests that if the facts are developed beyond the allegations of the amended complaint, an entirely benign explanation for her advice will emerge.

Regardless of the purpose and content of Ms. Sultan's advice, she cannot be liable for "recommend[ing] that Plaintiff withdraw his amended permit because of the Flanigan's complaint." (Doc. 44 ¶ 32.) A recommendation is just that—non-binding advice. Plaintiff makes no claim that he was misled or tricked through false information.

### 3. Unreasonable Searches

Plaintiff alleges that Ms. Sultan conducted intrusive inspections after the Act 250 permit issued. He claims that she visited his premises on at least three occasions in response to complaints by the Flanigans. But inspections and investigations of complaints of environmental violations form part of her duties. 10 V.S.A. § 8005(a)(1) ("An investigator may perform routine inspections to determine compliance [with land use permit requirements."). Plaintiff has not

pled any facts which would take the visits by Ms. Sultan to the kennel in response to the Flanigans' complaints outside of what is normal and expected in the context of permit enforcement.

**4.      Violation of State Constitutional Guarantee of Common Benefits Clause**

Plaintiff alleges that Ms. Sultan favored other businesses and imposed the Act 250 requirement only on his kennel while ignoring violations by Ryan Hovey's kennel. He relies upon the decision of the Vermont Supreme Court in *In re Town Highway No. 20*, 2012 VT 17, 191 Vt. 231, 45 A.3d 54, which recognized a private cause of action for violations of the Common Benefits Clause in the Vermont Constitution. VT Const., C. 1, Art. 7. This cause of action is very similar to the class of one action available under the Equal Protection Clause. "Though presented as a restriction of government and not a grant of privileges, Article 7 guarantees the right of the people to a government that does not favor any one person or family over another." *Id.* ¶ 32. In permitting private lawsuits against governmental officials and employees to vindicate this right, the court expressed the same concerns which inhibit the spread of "class of one" cases to every case in which citizens believe they have received arbitrary treatment inconsistent with the experience of their neighbors. The court imposed "stringent additional requirements" including proof of disparate and arbitrary treatment which directly favors another particular individual or group as well as official conduct "actuated by personal motives unrelated to the duties of the defendant's official position, such as ill will, vindictiveness, or financial gain." *Id.* ¶ 37.

The claims against Ms. Sultan fail to meet these requirements. There is no more than a cursory allegation that other businesses were treated more favorably by the permit administrator. There is no allegation that other particular individuals were favored. And there is no claim that

Ms. Sultan was motivated by personal ill will or financial gain. The claims against Ms. Sultan give substance to the concern, recognized by the majority in *In Re Town Highway No. 20*, that the ruling could "transform every local decision into a potential constitutional tort." *Id.* ¶ 56. The court dismisses the "Common Benefit" claim for failure to plead the elements of unequal treatment and favor of another resident with plausible specificity as well as failure to plead the scienter element of personal ill-will at all.

### 5. Privileges and Immunities Clause

Plaintiff alleges that the defendants' "continuous harassment, discriminatory permitting and license requirements" and "subjecting Plaintiff to unreasonable searches" "interfered and continue to interfere" with his "right to earn a living in a lawful occupation in violation of the privileges and immunities clause of the Fourteenth Amendment." (Doc. 44 ¶ 56.)

The Privileges and Immunities Clause provides that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. Amend. XIV § 1. It has been interpreted narrowly. As the Supreme Court recently reiterated in *McDonald v. City of Chicago*, the Clause protects the rights:

> to come to the seat of government to assert any claim [a citizen] may have upon that government, to transact any business he may have with it, to seek its protection, to share its offices, to engage in administering its functions . . . [and to] become a citizen of any State of the Union by a *bonafide* residence therein, with the same rights as other citizens of that State.

561 U.S. 742, 755 (2010) (quoting *Slaughter-House Cases*, 83 U.S. 36, 79–80 (1872)). The Clause "does not create a naked right to conduct a business free of otherwise valid state regulation." *Head v. New Mexico Bd. of Exam'rs in Optometry*, 374 U.S. 424, 432 n.12 (1963).

Nor can Plaintiff maintain a claim under the Privileges and Immunities Clause of Article IV. It provides that "The Citizens of Each State shall be entitled to all Privileges and Immunities of Citizens in the several States." U.S. Const. Art. IV, § 2, Cl. 1. That clause

"operates to 'place the citizens of each State upon the same footing with citizens of other states, so far as the advantages resulting from citizenship in those states are concerned.'" *Schoenefeld v. Schneiderman*, 821 F.3d 273, 279 (2d Cir. 2016) (quoting *Paul v. Virginia*, 75 U.S. 168, 180 (1868)). The "Clause prevents a State from discriminating against citizens of other States in favor of its own." *Id.* (internal quotation marks omitted). While the Clause "protects the rights of citizens to ply their trade, practice their occupation, or pursue a common calling," laws violate these rights "only when [they are] enacted for the protectionist purpose of burdening out-of-state citizens." *McBurney v. Young*, 133 S. Ct. 1709, 1715 (2013) (internal quotation marks omitted). Plaintiff is a citizen of Vermont. He makes no allegation that his ability to pursue his "lawful occupation" has been impaired on account of his state citizenship.

### D.     Conclusion

The court dismisses all claims against the defendants associated with the State of Vermont. These include the State of Vermont, District 7 Regional Environmental Commission, the Vermont Natural Resources Board, Kirsten Sultan, Diane Snelling, and Eugene Reid. The court does not reach the defendants' statute of limitations arguments, which present separate obstacles to plaintiff's claims against the state defendants.

## II.     Claims against Robert and Toni Flanigan

The state law claims against the Flanigans are for defamation, tortious interference with contractual relations, and intentional infliction of emotional distress. In addition, plaintiff makes a state constitutional claim against the Flanigans under the Common Benefits Clause and a federal conspiracy claim under § 1985(3).

### A.     Defamation

The defamation claim concerns statements "in public and to public officials" resulting in damage to reputation and to the kennel business "requiring him to expend time and money to

clear his name." (Doc. 44 ¶ 64.) The specific allegations concerning the Flanigans include claims that they made false complaints to law enforcement and other state and municipal officers and to private organizations such as animal rescue organizations and Green Mountain Power about violations of the permit, abusive conditions at the kennel, the illegal taking of a moose, and burning brush under electric lines. (Doc. 44 ¶ 30.)

The amended complaint alleges many false statements which are potentially defamatory. They are alleged with sufficient specificity to survive a motion to dismiss. Plaintiff will be obligated to provide much greater detail about these statements in his initial disclosure and in response to discovery requests. But for purposes of Rule 12, the amended complaint is sufficiently detailed and plausible to make out a defamation claim.

## B.    Tortious Interference

The Flanigans seek dismissal of the tortious interference claim because the plaintiff has failed to identify a single customer or contract which was affected by the Flanigans' conduct. The court agrees. The tort of interference with business or contractual relations "protects the same interest in stable economic relationships as does the tort of interference with contract, but applies to business relationships not formally reduced to contract." *Gifford v. Sun Data, Inc.*, 165 Vt. 611, 613, 686 A.2d 472, 474 (1996); *see also J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66 ¶ 22, 188 Vt. 245, 6 A.3d 701. In the case of a kennel, these relationships would include those with potential purchasers of puppies, suppliers of feed and supplies, and any other person doing business with the kennel. A conclusory allegation that defendants interfered with plaintiff's business and denied him the ability "to lawfully expand his business operations" is too general to meet the basic requirement that the complaint outline the elements of the tort and the facts supporting each element. *Gifford*, 165 Vt. at 613 n.2. Plaintiff's failure to add specific allegations when he amended his complaint is a clear indication he can point to no valid business

relationship or expectancy—such as with a customer or a supplier—that was damaged as a result of the Flanigans' opposition to the kennel expansion. The court dismisses Count 6 as against the Flanigans.

### C. Intentional Infliction of Emotional Distress

Vermont has long recognized the common law tort of intentional infliction of emotional distress ("IIED"). *Sheltra v. Smith*, 136 Vt. 472, 392 A.2d 431 (1978). To establish a claim for IIED, a plaintiff must show that a defendant "engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Cate v. City of Burlington*, 2013 VT 64 ¶ 28, 194 Vt. 265, 79 A.3d 854 (internal quotation marks omitted). Conduct is actionable under this theory only if it "was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decent and tolerable conduct in a civilized community and be regarded as atrocious and utterly intolerable." *Id.* (internal quotation marks omitted).

The allegations in this case, taken as true, fall short of establishing outrageous conduct. Plaintiff alleges that the Flanigans mounted a determined, even dogged, campaign to close his kennel and that they made false complaints about him to officials ranging from the municipal animal control officer to the state governor's office. According to the complaint, every grievance lodged by the Flanigans resulted in a finding of no violation. While this conduct would be irritating and disheartening, it is not the type of extreme misconduct which is necessary to support an IIED claim.

### D. Common Benefits Clause

The Flanigans seek dismissal of the Common Benefits clause on the ground that the cause of action applies only to state actors. They may well be correct in this view, but the court

20

does not reach the question because the claim fails against any defendant, state, municipal or private, for the reasons described above.

### E.    Federal Constitutional Claims and Civil Rights Conspiracy

At oral argument, Plaintiff agreed to the dismissal of the federal constitutional claims, arising under § 1983, against the Flanigans. The court has already explained that the civil rights conspiracy claim, arising under 42 U.S.C. § 1985, fails because it does not allege any race- or other qualifying animus or discrimination. These claims are therefore also dismissed as to Defendants Robert and Toni Flanigan.

### Conclusion

The court GRANTS the state defendants' motion to dismiss (Doc. 9) in its entirety and DISMISSES all claims against the State of Vermont, District 7 Regional Environmental Commission, the Vermont Natural Resources Board, Kirsten Sultan, Diane Snelling, and Eugene Reid.

The court GRANTS IN PART and DENIES IN PART the motions to dismiss filed by Defendants Robert and Toni Flanigan (Docs. 22, 50). The motions are DENIED with respect to the defamation claim (Count 7), but otherwise GRANTED as to all other claims.

Dated at Rutland, in the District of Vermont, this 16 day of May, 2017.

Geoffrey W. Crawford, Judge
United States District Court

21