U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 JUN -4 PM 3: 46

CLERK

BY
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

GREGORY HOVEY and VICTORY HILL )
KENNEL, LLC, )
)
Plaintiffs, )
)
v. )        Case No. 5:16-cv-266
)
TOWN OF VICTORY, VERMONT, )
ROBERT FLANIGAN, TONI FLANIGAN, )
SUE SKASKIW, FERNE LOOMIS, )
CAROL EASTER, DOUG PRESTON, )
)
Defendants. )

**ORDER ON MOTION TO DISMISS, MOTION FOR JUDGMENT ON THE
PLEADINGS, AND MOTIONS FOR SUMMARY JUDGMENT
(Docs. 142, 146, 147, 148)**

This case derives from a dispute between neighbors in the Town of Victory ("Victory")

over the land use permit for a dog kennel. Plaintiff Gregory Hovey owns and operates Victory

Hill Kennel, LLC ("VHK"), a commercial kennel that breeds Labrador Retrievers and beagles.[1]

Robert and Toni Flanigan are neighbors who opposed VHK's development because they were

concerned about the dogs' barking and living conditions.

The dispute has already been to the Vermont Supreme Court on an appeal of the Act 250

land use permit. *See In Re Gregory Hovey Act 250 Permit*, No. 2015-205, 2015 WL 7628685

(Vt. Nov. 1, 2015). After the permit was issued, Plaintiff filed this action in federal court,

alleging that he and his business were subjected to extensive unlawful persecution by various

state and municipal officials and by his neighbors in the course of this dispute. In particular,

Plaintiff alleges that Victory officials Ferne Loomis, Carol Easter, and Doug Preston acted in

---

[1] As Mr. Hovey is the managing member of Victory Hill Kennel LLC (*see* Doc. 126 ¶ 2),
the court will refer to these two parties collectively in the singular.

concert with the Flanigans and Sue Skaskiw, a humane officer who investigated VHK, to close down VHK by unfairly targeting Plaintiff for enforcement of the law. (*See* Doc. 126.)

The following motions are currently pending: Victory's motion to dismiss and/or for summary judgment (Doc. 142); the Flanigans' motion for summary judgment (Doc. 146); Ms. Skaskiw's motion for summary judgment and judgment on the pleadings (Doc. 147); and Ms. Loomis and Ms. Easters' motion for summary judgment (Doc. 148).

## Background

### I.    Residents of Victory

Plaintiff Gregory Hovey is a long-time resident of Victory, a small, rural town with around 70 residents. He has raised dogs and sold puppies as a hobby for almost 30 years. In March 2013, Plaintiff decided to expand his kennel operations and began constructing VHK on his property on Victory Hill Road.

Plaintiff is not the only dog breeder in his neighborhood. Ryan Hovey, who also lives on Victory Hill Road (*see* Doc. 143-14), also breeds and sells puppies. (Gregory Hovey Dep. 72:25–73:2, Dec. 21, 2017, ECF No. 143-19; *see also* Doug Preston Dep. 63:15–17, ECF No. 143-22 ("I know Ryan does have a litter or two a year. That's common knowledge. The whole street knows it."); Carol Easter Dep. 23:3–5, ECF No. 143-21 (testifying that she knows Ryan Hovey sold puppies).)

Several defendants in this suit are Plaintiff's neighbors, including the Flanigans, Ms. Loomis, Ms. Easter, and Mr. Preston. Although the Flanigans live in Connecticut (Robert Flanigan Dep. 5:5–7, ECF No. 152-11), they own a "vacation home" on Victory Hill Road (*id.* at 6:4–7) that borders Plaintiff's property. Ms. Loomis "lives near" Plaintiff on Victory Hill Road. (Doc. 148-1 ¶ 11 (citing Ferne Loomis Dep. 4:21–22, ECF No. 148-6).) Ms. Easter resides on Victory Hill Road, "about a quarter mile" from Plaintiff. (Carol Easter Dep. 5:20–21, 10:19–25,

ECF No. 143-21.) Mr. Preston resides "two properties down" from Plaintiff on Victory Hill
Road. (Doug Preston Dep. 5:13–14, 9:17–20.)

Ms. Loomis, Ms. Easter, and Mr. Preston have also served as Victory officials during
some of the events giving rise to this case. In January 2014, Ms. Loomis was elected to the
Victory Select Board and appointed as its Chair. Also in January 2014, Ms. Easter was appointed
Town Clerk of Victory. Mr. Preston was Victory's Animal Control Officer ("ACO") from March
2014 to March 2016.

A number of other Victory residents are implicated in this case. Patricia Mitchell served
as Victory's ACO before and after Mr. Preston. Her husband, Walter Mitchell, has served on the
Victory Select Board. Walter Easter, Ms. Easter's husband, has also served on the Select Board.

Drawing reasonable inferences in Plaintiff's favor, there are two opposing factions of
Victory residents. Ms. Loomis testified that "two very eminent sides" emerged in Victory that
"couldn't get along": residents aligned with Plaintiff ("the Hovey side") and residents aligned
with Ms. Loomis ("our side"). (Ferne Loomis Dep. 25:20–23.) According to Ms. Loomis, "the
Hovey side" includes, among others, Plaintiff and the Mitchells. (*See id.* at 26:4–9.) Ms. Loomis
further testified that "our side" includes, among others, Ms. Loomis, Mr. Preston, the Easters,
and the Flanigans. (*See id.* at 26:23–25.)

## II.     Complaints About the Conditions of VHK and Investigations

In June 2013, Mr. Flanigan filed a complaint with Joanne Bourbeau, Regional Director of
the Humane Society of the United States, alleging that Plaintiff was violating animal cruelty
statutes. Ms. Bourbeau and ACO Mitchell visited the kennel on October 18, 2013. In an email to
Mr. Flanigan dated October 20, 2013, Ms. Bourbeau stated that she "did not witness any
violations of the animal cruelty statute," and noted that "[t]he dogs were in good health, have

plenty of room to exercise, [and] have adequate dog houses that are built off the ground and insulated." (Doc. 153-4.)

In early 2014, the Flanigans complained about the conditions of VHK to the State Police, the Vermont Lieutenant Governor's office, the Vermont National Resources Board, the county prosecutor, and the Vermont Department of Agriculture. The Flanigans claimed that Plaintiff was not cleaning up the dogs' feces, had built inadequate shelters, and was neglecting the dogs.

In response to the Flanigans' complaints, the State Police first contacted ACO Mitchell. After visiting Plaintiff's home on January 27, 2014, ACO Mitchell reported that "[a]ll dogs are in great condition" and that the dog houses provided adequate protection. (Doc. 153-14 at 6.)

In January 2013, the Vermont Lieutenant Governor's Office engaged Sue Skaskiw to investigate the Flanigans' complaints against Plaintiff. Ms. Skaskiw is the humane officer of Vermont Volunteer Services for Animals Humane Society, Inc., a position authorized to investigate allegations of animal abuse and neglect under 13 V.S.A. § 354(b). Ms. Skaskiw and State Police Sergeant Brian Tallmadge inspected VHK on February 12, 2014. Ms. Skaskiw determined that the "[d]ogs all appeared to be in good condition" but that the dog houses violated animal welfare regulations by failing to adequately shelter the dogs. (Doc. 147-6 at 2–5.) In particular, she noted that the dog houses lacked proper insulation, a wind block, and appropriate bedding. Sergeant Tallmadge reported that "[a]ll the dogs appeared to be in decent health" and "[t]he kennel facilities appeared relative[ly] clean and well maintained[;] although there was animal feces present, it was not an excessive amount." (Doc. 153-7 at 14–15.) He further noted that "all of the dog houses lacked any kind of insulation other than an inch or two of wood chips on the floor" and "lacked any kind of protection from drafts." (*Id.* at 15.)

4

Sergeant Tallmadge visited Plaintiff's residence on February 28, 2014 to discuss ways to comply with the insulation and draft protection requirements described in the animal welfare regulations. He also inspected the kennels and found that Plaintiff had supplemented the dog houses' insulation, that "there was no excessive build up of [fecal] wastes," and that "the dogs [he] saw appeared to be in good health." (Doc. 153-7 at 16.) The next day, Sergeant Tallmadge confirmed that Plaintiff had complied with his suggestions regarding draft protections. Sergeant Tallmadge's police report concludes that "[a]t this point in time it does not appear [Plaintiff] is in violation [of animal welfare laws] . . . The dogs appear to be in good health and show no signs of being neglected or abused." (Doc. 153-7 at 17.)

On January 30, 2014, Aaron Brondyke, an enforcement officer for the National Resources Board, performed a surprise inspection of VHK in response to the Flanigans' complaints. He found that "[t]he kennels were clean . . . [with] very little dog waste, and the dogs appeared clean and healthy." (Doc. 153-10 at 3.)

On February 16, 2014, Dr. Stacey Henderson, Plaintiff's veterinarian, and ACO Mitchell visited VHK at Plaintiff's request to assess the condition of his dogs. Dr. Henderson found that "all the dogs appeared to be in excellent health. . . Their enclosures were very large, clean and appeared to be more than adequate for exercise. The dog houses seemed sufficient to provide shelter from the elements, although a close inspection was not made." (Doc. 153-25 at 2.) ACO Mitchell "found the dog shelters to be adequate[] and conforming to the plans in our animal cruelty investigation book." (Patricia Mitchell Aff. ¶ 18, ECF No. 153-15.)

Drawing reasonable inferences in Plaintiff's favor, Ms. Easter has also complained about the conditions of VHK. On February 19, 2014, Ms. Easter told Sergeant Tallmadge that on several occasions Plaintiff's kennels "appeared unkempt and disgusting because they were full of

5

dog feces." (Doc. 153-14 at 15.) Further, Ms. Skaskiw told the State Police on March 4, 2014

that "Ms. Easter has firsthand knowledge of him failing to provide adequate care for his animals

and that he should not be issued a pet dealer's license." (153-13 at 6.) In a statement provided to

Ms. Skaskiw on March 1, 2014, Ms. Easter claims that she signed Plaintiff's pet dealer permit

"under duress" and describes Plaintiff's treatment of his dogs as "animal abuse and neglect." (*Id.*

at 8.)

### III.    The Pet Dealer Permit Dispute

It is undisputed that Plaintiff requires a pet dealer permit to operate VHK under Vermont

law. *See* 20 V.S.A. § 3681. However, Plaintiff alleges that Victory required Plaintiff to obtain a

town pet dealer permit but "ha[s] never required the other breeder in Town, Ryan Hovey, to

obtain a Pet Dealer Permit." (Doc. 126 ¶ 31r.) He also alleges that he was required to comply

with additional conditions to obtain a pet dealer permit that were never imposed on others. The

court pauses to review the relevant Vermont laws governing pet dealer permits before turning to

the events underlying Plaintiff's legal claims.

### A.    Vermont Pet Dealer Permit Laws

Under Vermont law, any person who sells dogs "from three or more litters of dogs . . . in

any 12-month period" is considered a "pet dealer" and must obtain a "pet dealer permit."

20 V.S.A. §§ 3451(10); 3681. The process for obtaining a pet dealer permit is described as

follows:

> A pet dealer shall apply to the municipal clerk of the town or city in which the cats,
> dogs, or wolf-hybrids are kept for a pet dealer permit to be issued on forms
> prescribed by the Secretary and pay the clerk a fee of $25.00 for the same. A pet
> dealer who acquires a pet dealer permit shall allow inspections of the pet dealer's
> premises pursuant to section 3682 of this title as a condition of receiving and
> retaining the permit. The provisions of subchapters 1, 2, and 4 of this chapter not
> inconsistent with this subchapter shall apply to the pet dealer permit which shall be
> in addition to other permits required.

20 V.S.A. § 3681.

This pet dealer permit requirement went into effect on July 1, 2013. Act of May 14, 2013, No. 30, §§ 1, 4, 5, 2013 Vt. Acts & Resolves (codified as amended at 20 V.S.A. §§ 3541, 3681, 3682 (2018)). Previously, pet breeders were required to obtain a "kennel permit" if they owned "two or more dogs . . . four months of age or older kept for sale or for breeding purposes, except for his or her own use." 20 V.S.A. § 3681 (amended 2013).

**B.      Victory's Enforcement of the Pet Dealer Permit Laws**

In April 2014, Plaintiff approached Ms. Easter—the current Town Clerk—to obtain a pet dealer permit. (Hovey Dep. 100:14–101:19, Dec. 21, 2017.) Ms. Easter issued Plaintiff a pet dealer permit on February 10, 2015. (Doc. 143-1.)

After issuing the permit, Ms. Easter contacted the office of the Secretary of State of Vermont and determined that VHK was not registered as a business with the State of Vermont. (Carole Easter Dep. 25:5–13; Doc. 143-2 ("Certificate of Non-Existence").) In a letter dated July 28, 2015, Ms. Easter notified Plaintiff that Victory had revoked his pet dealer permit because VHK was not registered as a business with the State of Vermont and did not have a valid Vermont tax ID number. (Doc. 143-3 at 1.) Ms. Easter stated that Victory would reinstate the permit if Plaintiff provided copies of the "current Certificate of Registration from the state showing VHK is registered" as a business, "the tax ID# for the kennel," and "insurance covering the kennel." (*Id.*) After Plaintiff incorporated VHK and provided a tax ID number, his pet dealer permit was reinstated on July 31, 2015. (Doc. 143-5; *see also* Doc. 143-4 at 2 (Articles of Organization for VHK, effective July 30, 2015).)

The parties dispute whether *Ryan Hovey's* breeding operation requires a pet dealer permit. Plaintiff testified that Ryan Hovey was required to obtain a pet dealer permit but had failed to do so. (Gregory Hovey Dep. 105:3–11, Dec. 21, 2017.) He also testified that Ryan

Hovey's mother's Facebook posts indicated Ryan Hovey bred four litters of puppies in 2014. (*Id.*
105:15–19.) In 2016, Plaintiff provided copies of these Facebook posts to two Select Board
members and ACO Mitchell. (*Id.* at 105:11–20.) On August 26, 2016, ACO Mitchell informed
the Board that Ryan Hovey needed to obtain a pet dealer permit because it was her
"understanding that Mr. Ryan Hovey has now had three dog litters within a 12 month period."
(Doc. 143-6.)

 Although Ms. Easter knew Ryan Hovey sold puppies, she never checked if his breeding
operation was registered as a business with the State of Vermont or had a valid tax ID number.
(Carol Easter Dep., 23:3–19.) Ms. Easter testified that she "did not consider [Ryan Hovey] a
kennel" subject to the pet dealer permit requirements because he "only had three dogs, four at the
most." (*Id.* at 23:19–24.) According to Ms. Easter, "the difference between backyard breeders
[like Ryan Hovey] and a kennel . . . is backyard breeders have [a] minimal number of breeding
pairs and a kennel has multiple breeding pairs." (*Id.* at 23:23–24:3.)

 At the November 14, 2016 Select Board meeting, the Board discussed whether Ryan
Hovey required a pet dealer permit as well as the kind of activities that generally require a pet
dealer permit. (Doc. 143-7 at 1–2.) Plaintiff, who participated in the discussion as a member of
the public, stated that he had "photographs of four (4) different litters and dates of birth at [Ryan
Hovey's] house" and offered to provide the photographs to Board member Lionel Easter. (*Id.*
at 2.) Mr. Easter replied that Ryan Hovey had said "he only had two (2) litters in the last year."
(*Id.*) Mr. Mitchell said, "We need to do something . . . , find out if Ryan Hovey has had more
than three (3) litters and is still selling." (*Id.*) The Board ultimately tabled the issue until the
following meeting "to obtain more information." (*Id.*)

8

IV.     **The Dog License Dispute**

It is undisputed that Plaintiff "took the initiative" to license and vaccinate his dogs

(Gregory Hovey Dep. 102:12–21, Dec. 21, 2017) as required by Vermont law at all times

relevant to this action. *See* 20 V.S.A. § 3581(a). However, Plaintiff argues that Victory was

"entirely lax in requiring Ryan Hovey to even license his dogs as every pet owner is required to

do." (Doc. 155 at 7.) The court pauses to review the relevant Vermont laws regarding dog

licensing before turning to the events underlying Plaintiff's claims.

A.     **Vermont Dog License Laws**

Vermont law requires all dogs over six months old to be licensed in the clerk's office for

the municipality where the dog is kept. 20 V.S.A. § 3581(a). Owners must demonstrate that their

dog is currently vaccinated against rabies to obtain a license. *Id.* at § 3581(d). The clerk is

required to notify residents who fail to license or properly vaccinate their dogs. 20 V.S.A.

§ 3590(b). After May 30 each year, the clerk must provide the local legislative body with "a list

of dogs . . . not licensed or inoculated as required by law." *Id.*

In 2014, the Vermont legislature amended 20 V.S.A. § 3549 and 24 V.S.A. § 2291 to

empower municipalities to regulate and provide for the licensing of domestic pets. Act of

May 28, 2013, No. 162, §§ 2, 11, 2013 Vt. Acts & Resolves (codified as amended at 20 V.S.A.

§ 3549 (2018), 24 V.S.A. § 2291 (2018)). These amendments took effect on July 1, 2014.

B.     **Victory's Enforcement of the Dog License Laws**

As Town Clerk, Ms. Easter notified Ryan Hovey on May 29, 2014 that his dogs had not

been licensed. (Doc. 143-12.) Ryan Hovey did not respond. (Doc. 143-13.)

On August 12, 2014, Ms. Easter informed the Select Board by letter that Ryan Hovey and

Plaintiff had not properly licensed their dogs. (*Id.*) In the letter, Ms. Easter acknowledged that

Plaintiff had obtained a "Special License" on February 20, 2014 and had submitted rabies

vaccination certificates for his dogs at that time. (*Id.*) But she stated that "[t]he concern is which dogs are no longer [at his kennel] and what other dogs he has brought in. The Breeders Bill states kennels must inform municipalities of dogs gone from the kennel and new dogs brought in." (*Id.*)

At the August 12, 2014 Select Board meeting, the Board—which included Ms. Loomis— voted to authorize the Animal Control Officer to issue tickets to Plaintiff and Ryan Hovey based on Ms. Easter's report. (Doc. 143-14 at 2.) The Board also cited the 2014 amendments to 20 V.S.A. § 3549 and 24 V.S.A. § 2291, noting "[m]unicipalities now have the express legal authority to regulate the licensing of domestic pets . . . and issue tickets to pet owners who fail to comply with those requirements." (*Id.*)

Mr. Preston, as Victory's Animal Control Officer, wrote up a Municipal Complaint for Plaintiff on August 25, 2014 for failing to provide documentation that new dogs entering his breeding kennels were properly vaccinated. (Doc. 143-15 at 2.) Plaintiff subsequently provided Mr. Preston with copies of his dogs' immunization records, and the ticket was not issued. (Gregory Hovey Dep. 64:20–65:5, Dec. 21, 2017; Preston Dep. 65:3–5.) At the September 9, 2014 Select Board meeting, Ms. Easter advised the Board that Plaintiff's dogs were licensed until 2015. (Doc. 143-10 at 1.)

On September 2, 2014, Ms. Easter sent Ryan Hovey a second notice regarding his unlicensed dogs that indicated "a copy of a ticket issued by the Animal Control Officer" was enclosed. (Doc. 143-16.) Mr. Preston issued a Municipal Complaint to Ryan Hovey on October 16, 2014 for failing to provide rabies vaccination reports or register his dogs "after multiple notifications to do so." (Doc. 143-15 at 1.) Ryan Hovey received another Municipal Complaint on October 27, 2014 for failing to register his dogs. (Doc. 143-17.)

## V.  Causes of Action

Plaintiff's second amended complaint alleges nine causes of action under federal and state law. The court lists all of those causes of action here, but as described below, several claims against various defendants are no longer in the case.

### A.  Federal Claims

Pursuant to 42 U.S.C. § 1983, Plaintiff alleges violations of his rights to equal protection (Count One), due process (Count Two), freedom from unreasonable searches (Count Three), and privileges and immunities (Count Five). (Doc. 126 ¶¶ 33–44, 49–54.) He also alleges conspiracy to interfere with his civil rights under 42 U.S.C. § 1985(3) (Count Nine). (*Id.* ¶¶ 71–74.)

### B.  State Claims

Plaintiff alleges violation of his rights under the Common Benefits Clause of the Vermont Constitution (Count Four). He also alleges three common law tort causes of action: interference with business relations (Count Six), defamation (Count Seven), and intentional infliction of emotional distress ("IIED") (Count Eight). (*Id.* ¶¶ 49–54, 59–74.)

### Procedural History

## I.  Prior Decisions

In its May 16, 2017 decision, the court dismissed "all claims against the defendants associated with the State of Vermont," including the State of Vermont, District 7 Regional Environmental Commission, the Vermont Natural Resources Board, Kirsten Sultan, Diane Snelling, and Eugene Reid. (Doc. 60 at 18.) The court also dismissed all claims against the Flanigans except for the defamation claim. (*Id.* at 21.)

In its August 6, 2018 decision, the court dismissed all claims against Doug Preston except for the defamation claim. (Doc. 104 at 7.)

## II.    Pending Motions

On October 19, 2019, Victory filed a motion to dismiss or, in the alternative, for summary judgment on all claims raised against the town. (Doc. 142.) Both Victory and Plaintiff treat the motion primarily as a motion for summary judgment and support their arguments with statements, documents, and affidavits outside the pleadings. Accordingly, the court converts Victory's Rule 12(b)(6) motion into a motion for summary judgment. Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."); *accord Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011); *see also Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 165 (S.D.N.Y. 2006) (converting motion to dismiss into motion for summary judgment where "both parties treat the motion primarily as one for summary judgment, and both parties seek to have the Court consider statements, documents, and affidavits that were not included in, attached to, or incorporated by the Amended Complaint").

Ms. Loomis and Ms. Easter filed a separate motion for summary judgment on October 29, 2018. (Doc. 148.) However, the arguments raised in both Victory's and Ms. Loomis and Ms. Easters' motions for summary judgment are duplicative and apply equally to Victory, Ms. Loomis, and Ms. Easter. Accordingly, the court will consider both motions for summary judgment together.

On October 29, 2019, Ms. Skaskiw filed motions for judgment on the pleadings and summary judgment on all claims raised against her. (Doc. 147.) Both Ms. Skaskiw and Plaintiff treat the motion primarily as a motion for summary judgment and support their arguments with statements, documents, and affidavits outside the pleadings. Accordingly, the court converts Ms.

Skaskiw Rule 12(c) motion into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d);

*accord Halebian*, 644 F.3d at 130; *see also Access 4 All*, 458 F. Supp. 2d at 165.

On October 29, 2018, the Flanigans filed a motion for summary judgment on the

defamation claim (Doc. 146), the only claim the court did not dismiss against them (Doc. 60 at

21).

### III.   Plaintiff's Waivers

In his opposition papers to their motions for summary judgment, Plaintiff waives all

claims against Victory, Ms. Loomis, and Ms. Easter under Counts 2, 3, 5, 6, and 8. (Doc. 155 at

3; Doc. 154 at 9.) The court dismisses those counts with respect to Victory, Ms. Loomis, and Ms.

Easter.

Plaintiff also concedes that his federal and state constitutional claims do not apply to Ms.

Skaskiw and withdraws his IIED claim against Ms. Skaskiw. (Doc. 153 at 9.) The court

accordingly dismisses Counts 1, 2, 3, 4, 5, 8, and 9 with respect to Skaskiw.

### IV.   Remaining Claims

After the court's prior rulings (Docs. 60, 104) and after Plaintiff has waived some of his

claims (Doc. 155 at 3; Doc. 153 at 9; Doc. 154 at 9), the following claims remain in this case:

#### A.   Federal Claims

- *Equal Protection (Count 1).* This is a "class of one" claim advanced under 42 U.S.C.

  § 1983. There is no claim of racial discrimination or a claim that Plaintiff is a member

  of a protected group. Plaintiff claims that he has been treated in an arbitrary manner

  by Victory officials. Specifically, he alleges Ms. Loomis and Ms. Easter imposed

  "permit and license requirements not required of other similarly situated businesses in

  the Town of Victory" at the Flanigans' inducement. (Doc. 126 ¶¶ 34–35.)

13

- *Conspiracy to interfere with civil rights (Count 9).* This claim is advanced under 42 U.S.C. § 1985(3). Plaintiff alleges that Ms. Loomis and Ms. Easter, as officials of Victory, conspired to shut down VHK by imposing requirements to obtain permits not required of other similar businesses, by conducting numerous searches, and by "continuous harassment." (*Id.* ¶ 71.)

**B.     State Claims**

- *Common Benefits Clause (Count 4).* Plaintiff alleges that the actions of Ms. Loomis and Ms. Easter, as officials of Victory, "in collaboration" have denied plaintiff rights to equal treatment under the Common Benefits Clause of the Vermont Constitution "by arbitrarily requiring and denying permits and licenses not required by or denied to others similarly situated." (*Id.* ¶ 52.)

- *Tortious interference with business relations (Count Six).* Plaintiff alleges that Ms. Skaskiw has "interfered and continue[s] to interfere with Plaintiffs' business," causing "irreparable harm to Plaintiffs' business" and denying Plaintiff the ability "to lawfully expand his business operations." (*Id.* ¶ 60.)

- *Defamation (Count 7).* Plaintiff alleges that Mr. Preston, the Flanigans, Ms. Loomis, Ms. Easter, and Ms. Skaskiw "made false and defamatory statements in public and to public officials against Plaintiff Hovey[,] resulting [in] damage to his reputation and his business, and requiring him to expend time and money to clear his name." (*Id.* ¶ 64.)

## Analysis

### I. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party is entitled to summary judgment only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" when, under the substantive law, "it might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In deciding whether there is a genuine dispute of material fact, the court "construe[s] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010). Initially the burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion has been made, the burden shifts to the nonmoving party to set out specific facts showing a genuine issue for trial. *Cifarelli v. Vill. of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996).

### II. Claims Against Victory, Ms. Loomis, and Ms. Easter

As discussed above, the court has dismissed all claims against Victory, Ms. Loomis, and Ms. Easter under Counts 2, 3, 5, 6, and 8 pursuant to Plaintiff's waiver of those claims. (Doc. 155 at 3; Doc. 154 at 9.) Victory, Ms. Loomis, and Ms. Easter move for summary judgment on all remaining claims alleged against them—Counts 1, 4, 7, and 9.

### A.      Count 1: Equal Protection/Class-of-One

Plaintiff alleges that Victory, Ms. Loomis, and Ms. Easter denied him equal protection of the laws "by arbitrarily enforcing permit and license requirements not required of others." (Doc. 126 ¶ 35.) In particular, Plaintiff maintains that Victory officials targeted Plaintiff for enforcement of the pet dealer permit and dog licensing statutes. By comparison, Plaintiff argues that "not only did the town not require a pet dealer permit of Ryan Hovey, but it was entirely lax in requiring Ryan Hovey to even license his dogs as every pet owner is required to do." (Doc. 155 at 7.) Plaintiff describes this as a "party of one" equal protection claim. (Doc. 155 at 4.)

> To establish a "class-of-one" equal protection claim, a plaintiff must show that:
>
> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate governmental policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (per curiam) (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006)).

"As a general rule, whether persons or businesses are similarly situated is a factual issue that should be submitted to the jury." *Ingleside Equity Grp., LP v. City of St. Albans*, No. 2:13-CV-53, 2014 WL 2118440, at *5 (D. Vt. May 21, 2014) (citing *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). However, summary judgment is appropriate "where it is clear that no reasonable jury could find the similarly situated prong met." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 n.2 (2d Cir. 2001); *accord Ingleside Equity Grp.*, 2014 WL 2118440, at *5.

Victory, Ms. Loomis, and Ms. Easter argue that Plaintiff's class-of-one equal protection claim should be dismissed because Plaintiff has failed to show he and Ryan Hovey are similarly

situated. In response, Plaintiff acknowledges that the court previously dismissed his class-of-one

claim against Mr. Preston after finding that Plaintiff failed to allege a valid comparator because

his kennel was the subject of complaints from his neighbors while Ryan Hovey's kennel was not.

(*See* Doc. 155 at 4–5; *see also* Doc. 104 at 4–5). However, Plaintiff claims that additional

evidence that was not before the court on Mr. Preston's motion to dismiss shows that these

complaints were false. Plaintiff points to the findings of a number of the professionals who

inspected VHK and "determined that [Plaintiff's] kennels were well maintained[] and the dogs

were healthy," including Ms. Bourbeau, Mr. Brondyke, ACO Mitchell, Sergeant Tallmadge, and

Dr. Henderson. (Doc. 155 at 4.) Plaintiff argues that these findings indicate that Victory and its

officials targeted his kennel based on "false complaints" filed solely for the purpose of shutting

down VHK. (Doc. 155 at 5–6.)

As Victory correctly notes, these allegations have nothing to do with whether Plaintiff

and Ryan Hovey are similarly situated. To establish a class-of-one claim, "plaintiffs must show

an extremely high degree of similarity between themselves and the persons to whom they

compare themselves." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59–60 (2d Cir.

2010) (quoting *Clubside*, 468 F.3d at 159. Here, the evidence shows Plaintiff and Ryan Hovey

were not similarly situated and that their alleged differential treatment had a rational basis:

Plaintiff was the subject of complaints from his neighbors. There is no evidence that Ryan

Hovey's operation was also the subject of multiple complaints from neighbors. As this court

previously found in both its May 2017 and August 2018 decisions, the fact that Plaintiff was the

subject of complaints from his neighbors—while Ryan Hovey was not—is sufficient to

distinguish Plaintiff's circumstances from Ryan Hovey's. (*See* Doc. 60 at 14–15, Doc. 104 at 9–

10.) Even if these complaints were ultimately invalid, Plaintiff presents no evidence that Victory officials did not act "on the basis of a mistake." *Fahs Constr. Grp.*, 725 F.3d at 292.

Moreover, the evidence shows that Victory officials did not treat Plaintiff differently from Ryan Hovey. Although Plaintiff maintains that Victory did not require Ryan Hovey to obtain a pet dealer permit or license his dogs, "[t]he injury involved in a class-of-one claim is intentional, arbitrary, and irrational discrimination, not a mere difference in outcomes." *Missere v. Gross*, 826 F. Supp. 2d 542, 565–66 (S.D.N.Y. 2011) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). Victory cited both Plaintiff and Ryan Hovey for purportedly violating dog licensing laws; it notified Ryan Hovey multiple times that he needed to properly license his dogs and issued at least two Municipal Complaints against him for failing to do so.

Further, Plaintiff fails to show any genuine issue of material fact regarding Victory's enforcement of the pet dealer permit laws. Even when construed in the light most favorable to Plaintiff, the evidence indicates only that Victory and its officials failed to affirmatively sanction Ryan Hovey for engaging in activities that require a pet dealer permit under 20 V.S.A. § 3681. However, Victory also never affirmatively sanctioned Plaintiff for improperly operating VHK without a pet dealer permit; rather, Plaintiff took the initiative to obtain a permit. The court notes that a number of Victory officials, particularly Ms. Easter, were mistaken about the kinds of activities that require a pet dealer permit and the process for obtaining a permit. But Plaintiff presents no evidence that Ryan Hovey ever applied for a pet dealer permit, let alone that Victory provided Ryan Hovey with a permit without subjecting him to the same conditions imposed on Plaintiff. Because Plaintiff fails to provide any evidence indicating that Victory treated Ryan Hovey's breeding operation more favorably, his class-of-one equal protection claim fails and must be dismissed.

18

**B.     Count 9: Conspiracy to Deprive Plaintiff of His Civil Rights**

To successfully allege a conspiracy claim under § 1985(3), a plaintiff must establish the

following:

> 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Dolan v. Connolly*, 794 F.3d 290, 296 (2d Cir. 2015) (quoting *Britt v. Garcia*, 457 F.3d 264, 269

n.4 (2d Cir. 2006)). The plaintiff must also demonstrate that the conspiracy was "motivated by

some racial or perhaps otherwise class-based, invidious discriminatory animus." *Id.* (quoting

*Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007)).

Here, Plaintiff argues only that Victory, Loomis, and Easter "conspired with [the

Flanigans] to deprive [Plaintiff] of his constitutional right to equal protection." (Doc. 155 at 10.)

He presents no evidence indicating that this conduct was motivated by class-based, invidious

discriminatory animus. Plaintiff emphasizes Ms. Loomis's testimony that residents of Victory

have formed two factions: those aligned with Plaintiff—"the Hovey side"—and those aligned

with Ms. Loomis, including the Flanigans, Easter, and Preston. (Ferne Loomis Dep. 25:20–23,

26:22–25, ECF No. 152-9.) But to the extent that Plaintiff argues § 1985(3) protects a class of

Victory residents defined by personal animosity, this putative "class" does not possess "the type

of inherited or immutable characteristics sufficient to satisfy the class-based animus

requirement." *Dolan*, 794 F.3d at 296; *see also id.* ("[T]he term class unquestionably connotes

something more than a group of individuals who share a desire to engage in conduct that the

§ 1985(3) defendant disfavors." (quoting *Town of W. Hartford v. Operation Rescue*, 991 F.2d

1039, 1046 (2d Cir. 1993))). Because Plaintiff has failed to demonstrate membership in a class

protected under § 1985(3), his conspiracy claim must be dismissed.

### C.    State Law Claims

In a civil action where original federal jurisdiction is established, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But a district court may decline to exercise supplemental jurisdiction over state law claims if the court "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).[2] The court has considered the issues of judicial economy, convenience, fairness, and comity, and concludes that none of those factors favors retaining jurisdiction over the state claims. *See Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) (state claims should generally be dismissed if all federal claims are dismissed before trial).

## III.   Claims Against Skaskiw

Ms. Skaskiw has moved for summary judgment on all claims alleged against her. (Doc. 147.) As discussed above, Plaintiff concedes that his federal and state constitutional claims do not apply to Ms. Skaskiw and withdraws his IIED claim against her. (Doc. 153 at 9.) The court has accordingly dismissed Counts 1, 2, 3, 4, 5, 8, and 9 with respect to Ms. Skaskiw. This leaves for the court's consideration Counts 6 and 7, both of which arise under state law. For the reasons stated above, the court declines to exercise supplemental jurisdiction over these state law claims.

---

[2] The court notes that Plaintiff alleges in the Second Amended Complaint that this court has diversity jurisdiction over this action because the Flanigans reside outside the State of Vermont. (*See* Doc. 126 ¶ 6.) Even assuming that the Flanigans are domiciled in Connecticut, not Vermont, "[d]iversity jurisdiction under 28 U.S.C. § 1332 is proper 'only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State.'" *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)). Because the remaining defendants in this action are domiciled in Vermont, this court does not have diversity jurisdiction over this case.

IV.     **Claim Against the Flanigans**

The Flanigans have moved for summary judgment on the defamation claim (Doc. 146),

the only remaining claim alleged against them (*see* Doc. 60 at 21). For the reasons stated above,

the court declines to exercise supplemental jurisdiction over this state law claim.

### <u>Conclusion</u>

Pursuant to Plaintiff's waivers (Doc. 155 at 3; Doc. 153 at 9), Counts 2, 3, 5, 6, and 8 are

voluntarily dismissed with respect to Victory, Ms. Loomis, and Ms. Easter. Similarly, Counts 1,

2, 3, 4, 5, 8, and 9 are voluntarily dismissed with respect to Ms. Skaskiw. (Doc. 154 at 9.)

The court GRANTS Victory's Motion for Summary Judgment (Doc. 142) and Ms.

Loomis and Ms. Easters' Motion for Summary Judgment (Doc. 148) with respect to Counts 1

and 9, the remaining federal claims in this case. The court declines to exercise supplemental

jurisdiction over the remaining state-law claims and dismisses those claims without prejudice.

Accordingly, Ms. Skaskiw's Motion for Summary Judgment (Doc. 147) and the

Flanigans' Motion for Summary Judgment (Doc. 146) are GRANTED because the court lacks

subject matter jurisdiction over the remaining claims alleged against them.

Finally, the remaining defamation claim alleged against Mr. Preston is dismissed because

the court lacks subject matter jurisdiction over the claim.

Dated at Rutland, in the District of Vermont, this 4th day of June, 2019.

Geoffrey W. Crawford, Chief Judge
United States District Court